CHARLES P. MATTOCKS *vs.* CHARLES YOUNG.

Cumberland, 1876.—November 21, 1876.

*Evidence. Tender. Trial. Contract.*

When a party signs his name to an instrument by himself as attorney it has the same binding force and effect as if he simply signed his name; and his authority as attorney will be presumed without proof.

The same result will follow if he thus adopts his name previously signed by another.

In the absence of any suggestion of fraud a party is conclusively presumed to know the contents of a paper to which he has subscribed his name as a party.

A tender required by a contract will be waived by the party in whose favor it was required, by any words or acts on his part showing that it would not be received or denying any liability under the contract.

A party waives his right to a jury trial by a suggestion to the court that its rulings have left nothing for the jury to pass upon, provided such rulings have been in accordance with the law.

A power of attorney and the written contract entered into by virtue of such power, though executed at the same time, are not necessarily to be construed as one paper.

In the absence of any ambiguity in the contract, or any reference to the power, the contract is to be construed by its own terms, and the power is to be referred to only to show the nature and extent of the authority conferred.

ON EXCEPTIONS from the superior court.

COVENANT BROKEN for refusing to transfer a draft after tender of amount agreed in accordance with contract under seal.

The facts are these: In December, 1872, John W. Jones, corn packer, was indebted to Levi Millett for corn furnished at Bridg-

ton factory, balance of $101.64; to G. G. Learned, same account, $90.50; to Charles Young, same account, $88.72.

On January 10, 1873, the defendant settled his own account together with Millett's and Learned's, receipting in full for each account and signing the accounts of Levi Millett and G. G. Learned on the corn Ledger, "Levi Millett per Charles Young," "G. G. Learned per Charles Young," taking in payment one draft upon Jones, drawn by his Bridgton agent, payable at sight to his (Young's) order. This draft was accepted upon presentation, but during the three days of grace, Jones failed, and the draft was not paid. An attempt was soon after made to compromise with creditors. In this attempt Charles Young, who still held the dishonored draft, was treated with as a creditor to the extent of the draft and chosen one of a committee of nine, appointed on behalf of the creditors whose debts had been incurred at the Bridgton factory, with full power under seal as their attorneys to settle, compound, sell or transfer their debts, or to make binding agreement so to do upon such terms and conditions as they should see fit.

Many of the corn planters in Bridgton, had received one-half of their pay for corn furnished in 1872, as in the case of Learned and Young, while others had received little or nothing as in the case of Millett. It was agreed therefore, that all the creditors represented should transfer their claims to the plaintiff in this suit, for such sum as, with amounts previously received, should give them the first half of their indebtedness in full, and ten per cent on the balance. There were over three hundred Bridgton factory creditors represented by these nine attorneys, and their names were appended to the instrument, by which the agreement to transfer was made in alphabetical order, the christian names coming last, with seals annexed. Among these names were placed the names of the committee. To the paper so drawn, the words "by their attorney," were then added, and the committee, (defendant included,) then signed and delivered the document, March 20, 1873. (Exhibit A.) By its terms the purchase was to be made within sixty days. Before that time elapsed the plaintiff notified the defendant and others that he should purchase the claims on April 10, 1873, at Bridgton.

At the time appointed the plaintiff tendered the defendant $104.30, in legal currency. By some error in computation the amount tendered considerably exceeded the amount due Young, upon the draft by the terms of the covenant. The defendant made no question as to the amount but refused to take the tender on the ground that he had not agreed to do so. He, however, consented to and did take $48.90, the amount due upon the Levi Millett debt, incorporated into the draft and indorsed on the back of the draft, $101.64 being Levi Millett's part, as paid. The plaintiff then notified the defendant, that the tender would be kept good, and they parted. Soon afterwards the defendant commenced an action against Jones for the full balance due on the draft, after deducting Millett's portion, and at the September term of the superior court, 1875, recovered judgment for $251.86, debt and costs, which was paid.

This action was brought for breach of covenant in refusing to transfer the Jones draft, in accordance with the terms of exhibit A, after the tender was made.

The defendant contended that he was not properly a creditor of Jones and testified that although corn was credited to him on Jones's book yet it belonged to Trull & Hamlin, customers at his store, the proceeds realized from Jones to be credited on their store account; that though he signed his name to paper A, as one of the attorneys of the creditors, he did not know that his own name was one in the list of creditors for whom he purported to be acting; that it was put there without his authority or consent.

The court admitted paper A, and also ruled other points adversely to the defendant.

After the evidence was closed, the counsel for the defendant stated that he did not care to argue the case; that, under the rulings, he did not see that the court had left any question for the jury. Thereupon under the direction of the justice, the jury returned a verdict for the plaintiff for $186.10 ; and the defendant alleged exceptions.

*S. C. Strout & H. W. Gage,* for the defendant, contended, in substance :

I. That the deed in question was not the deed of the defendant,

but only the deed of such creditors as had specially appointed him by power of attorney, to represent them.

II. That Young was not properly a creditor of Jones; that the debts due to Millett and Learned included in the draft, were still due Millett and Learned, at the time the paper A was executed and the tender made, and that the corn credited on Jones's book to Young, was really the property of one Trull and one Hamlin, and the indebtedness of Jones for said corn, was likewise an indebtedness to Hamlin and Trull at the time that paper A was executed and the tender made; that Young not being a creditor, plaintiff could not have suffered by any refusal to transfer on his part.

III. That Mattocks, the plaintiff, really executed the paper for Jones's interest, and in his behalf and that this suit is likewise prosecuted solely for Jones's benefit.

IV. That the proper amount due by the terms of the covenant was not tendered.

V. That there were certain disputed issues of fact in the case, which should have gone to the jury, and upon which the court unwarrantably passed.

VI. That there were other errors in the admission and in the exclusion of testimony.

*C. P. Mattocks & E. W. Fox,* for the plaintiff.

DANFORTH, J. The first question presented by the exceptions in this case is whether the instrument declared upon is the deed of the defendant. The only objection raised is a want of execution. There is no dispute about the facts upon this point. There are many signatures to the paper as parties all of which, including that of the defendant, were written by one person. Then follows the word "by" with the genuine signatures of nine persons, and the words "their attorneys." Among these nine is the name of the defendant. The objection is that the only signature of the defendant, attached to the paper, which is genuine was put there as attorney only and that which is put there as a party was without authority. It is conceded that the name first put to the deed was put there by a person having no authority to make the paper a

binding contract, nor was it put there for such purpose until adopted by the committee of nine. But when the committee signed, it was for the purpose of making it a binding contract upon all whose names had been previously affixed, and such would be the effect if the committee were duly authorized so to do. It is not necessary for the attorney himself to write the name of his principal. That, as in this case, may be done by a clerk or any other person. It is sufficient if the name so written be adopted by the agent or attorney over his own signature with apt words to show such adoption. All this was done in this case, but testimony was offered tending to show that the defendant did not know that his name was to the paper when he signed as attorney and therefore he could not have adopted it. The testimony was excluded and properly so. He evidently put his name there for some purpose, and that purpose must be ascertained from the paper itself. His signature was in the proper place and accompanied by apt words to show that he with his associates intended to make the instrument binding upon those whose names had been previously written thereon, and that in fact they adopted the signatures there found and used them for the purpose for which they claimed authority. The instrument taken together will bear no other construction. The sanction given to the names was precisely the same as that given to the contract or any part of it, and the defendant or any party to it might as well seek to relieve himself from any particular provision therein contained on the ground that he did not know it was there, as to ask relief from the liabilities resulting from his signature because his sanction was given to it in ignorance. In the absence of any suggestion of fraud he is bound to know what he signs. He can hardly set up his own carelessness as a defense to a contract by him signed without the fault of the other party. *Winslow* v. *Driskell*, 9 Gray, 363.

But it is said that knowledge is a necessary element of ratification, and that therefore he could not ratify the unauthorized act of the party who put his name there. This may be true, but strictly speaking, here is no question of ratification, nor so far as appears, any unauthorized act to ratify. True, he says he did not authorize his name to be put there. He was, however, one of a com-

mittee of nine, to whom he had given authority to enter into such a contract. That contract was prepared including the names, presumably by their direction, as a committee. It was not intended as a contract, until it had received their sanction. So far it was merely a clerical act. So far we cannot say it was unauthorized. If he means, as probably he does, that he authorized no one to put his name there, as to a binding contract, it is undoubtedly true, and it is quite as true that it was not put there for such purpose. There was then no occasion for him to ratify anything. The act was his own. The form merely was presented to him, that he might give it life and force. This he did by his signature, and he is now estopped from pleading ignorance of its contents. Hence, whether the act of writing the defendant's name was authorized or otherwise, no question of ratification is raised; that is done only when one assuming an agency, performs some act which purports to impose an obligation or liability upon another. Such was not the case here. An act was done, not to impose an obligation upon, but for the consideration of the defendant with others. If he gave it vitality without sufficient investigation, it was his fault alone, and he must abide the consequences.

It is however contended that the attorneys had no sufficient authority to bind the defendant to such a contract, and that, as far as they did or could bind him, the covenant has been fully executed.

The case shows the failure in business of one J. W. Jones, having a large number of creditors. A portion of these creditors selected the committee of nine spoken of, and authorized them by a written power of attorney to make such settlement or disposition of their claims as in their judgment might seem proper. The power of attorney recites, that "we, the undersigned, . . . creditors of John Winslow Jones, for the amounts set against our respective names, do hereby make, constitute and appoint, (naming the nine persons who executed the covenant in question,) our true, lawful and sufficient attorneys, with full power . . . to sell, assign and transfer, and according to their best judgment, finally adjust, or otherwise dispose of our said claims," &c. The defendant was one of the attorneys named, and signed the power with the words and figures, "to amount of $101.64," against his name.

At the time of the execution of this instrument, as well as that containing the covenant in question, the defendant had in his possession a draft for $280.86, payable to himself or order, drawn and accepted by said Jones. This draft was made to cover three distinct and different debts, one due Levi Millett for $101.64, one to G. G. Learned for $90.50, and the other as appears from Jones's books, to the defendant, for $88.72. These debts were severally receipted by the defendant, upon the books, as having been paid to him in full.

It is contended that as the defendant's claim in the power of attorney was limited to the sum of $101.64, and as that was the amount of Millett's claim, a fair construction of the two papers will show that the defendant in this transaction was acting for Millett alone, and that debt having been settled in accordance with the covenant, no further liability rests upon him in relation to the other two demands ; in other words, the covenant covered the Millett demand alone. But in this construction we meet with some insurmountable difficulties. The two papers, as the defendant testifies, may have been executed at the same time ; but we cannot consider them as a part of the same transaction in such a sense as to require them to be construed as one instrument. They are in furtherance of the same final purpose ; but the first is only a step in reaching the end, while the second is the end itself. The deed contains all there is of the contract and is free from any ambiguity. It must therefore be interpreted by its own terms alone. The deed makes no reference to the power for any limitations or explanations, and besides the two are not made by the same parties. As the attorneys have signed as such, we may inquire into the extent of their authority to make such a contract ; but for its meaning we must be confined to the writing in which it is set out. The contract is one thing, the authority or want of authority is another and entirely different thing.

We come then to the question as to the authority of the attorneys to make the contract they did. So far as the attorneys and principals are not the same persons, the written power must settle that question.

When, however, as in case of this defendant, the principal and

attorney are the same, a different rule must prevail. When a party signs his own name by himself as attorney or, what is here the same thing, adopts his name already signed, it would be somewhat of a novelty to permit him to say he was not authorized to do so. It would be a little singular to permit the same man to say as attorney he had authority and as principal he had given no authority. There is nothing so sacred in a written instrument that it cannot subsequently be changed in its terms or enlarged in extent even by parol, so that whenever we find the name of a party to a contract, though he may choose to put it there by himself as attorney, we need look no further than the paper itself for his authority and the extent of his liability. Nor is it material that others were associated with him in executing the power. This may explain in this case the reason why the defendant executed the covenant as he did. He signed with the others with a conclusive presumption that he knew what he was doing, as well as what the writing contained. He knew then or should have known that they were binding him to the terms of the contract and now that the rights of other parties have intervened, it is too late for him to object on the ground of a want of authority.

Independent of this, it is by no means certain that the power did not authorize the attorneys to make the contract which they did.

The defendant describes himself as a creditor to a certain amount, giving no indication that such is not the full amount, then gives his attorneys power to settle not that amount but his debt. In pursuance of that power they assign his debt without limiting the amount. Does not such an assignment carry the debt? If they had assigned or discharged it for the percentage due on the amount given, he would undoubtedly have been estopped from claiming more of the attorneys, and for aught we see, of the debtor in the absence of fraud or mutual mistake, but in the case of sale we see no reason why the purchaser might not claim the whole amount due. But a decision of this point is not necessary.

The result is that the instrument declared upon is the deed of the defendant and he is bound thereby according to its terms.

It is claimed further that the deed is not admissible because

there is a variance between that and the declaration. This may be so. No copy of the writ has been furnished. But if so it is now immaterial. At the trial the objection was not put upon that ground but solely upon another and entirely distinct one. Therefore that objection, if it had any existence, by well settled rules of practice, was waived and cannot be revived in this court.

An objection, suggested to the maintenance of the action, is that no sufficient tender was made. It is true that as a condition precedent to any liability or obligation on the part of the defendant there was "to be paid or tendered to him within sixty days, a sum equal to ten per cent thereof, on first receiving a sum which with payments already made shall equal fifty per centum of the original indebtedness, said fifty per centum or the balance thereof to be paid one-half cash and one-half in negotiable indorsed paper . . the said ten per centum to be computed on said balance remaining due after said fifty per centum has been paid." It will be noticed that the payment in notes applied only to the fifty per cent, and not to the ten per cent. If, therefore, the first half of the indebtedness was paid and received by the creditor there was no occasion to make any tender of a note; it only remained to tender the ten per cent on the balance which was to be in cash as no other way was provided for its payment. Now, whatever may have been the defendant's claim; the first half had been paid and received before the commencement of the action. That part which was due to Millett had been settled in full by the agreement of parties. The half due to Learned and more than half due to himself, or Trull and Hamlin, as the case may be, had been paid before even the agreement was made. These in any view covered all his claims; and, therefore, in this action no question can arise as to the payment or tender of the first half. It was claimed that the ten per cent had been tendered, and testimony offered, which we think would have authorized a jury to have so found. But whether so or not, the defendant, by his refusal to receive any sum less than the whole amount after the Millett demand was paid and denying that the balance of the draft or any part of it was included in the covenant, waived such tender as should otherwise have been made. *Hazard* v. *Loring*, 10 Cush. 267.

Upon principles of law applied to the undisputed facts in the case, it is clear that the paper declared upon is the deed of the defendant and that he is liable for whatever damages may have resulted from the breach of the covenant therein contained. The breach relied upon is the refusal to assign his claim against Jones as agreed. Whatever that was was to be assigned. There are no limitations, qualifications or exceptions whatever. The proof of his debt is the draft of Jones already referred to. Whether he was the owner of the whole draft is a question of fact upon which testimony was offered on both sides. It is conceded that three different accounts are embraced in it. One of them has been settled and the amount indorsed upon it. When negotiable paper is given for the amount due on an account, the presumption is that it was in payment. In confirmation of this, the defendant had receipted these accounts in full and taken the draft in his own name. He signed the power of attorney claiming to be a creditor in his own right, in a less amount to be sure then the amount of the draft; but, from his own testimony, he had more interest in the balance than in that; he entered into a covenant with the plaintiff to assign the whole of his demand, which was the draft so far as the plaintiff knew. He had assumed to control that and no other claim, and finally obtained judgment upon and collected it in his own name. Under these circumstances, a fair inference would be that it was intended that the covenant should attach to that debt. If so the damages are correctly made up. It is claimed that this point involves a question of fact which should have been submitted to the jury. It is also claimed there are other questions of fact, and that the covenant itself was without consideration and void. How far testimony may be admissible upon this point under a sealed instrument we do not deem it necessary to inquire in this case. There are some rulings as to the admission of certain papers which have not been furnished and therefore we assume that the exceptions to such are waived. Upon a careful examination we find no error in the ruling of the law. If there were any questions of fact for the jury they were waived inasmuch as it was not only not claimed that there was anything for the jury to pass upon, but the reverse was stated. We think, however, that the law applied to

the undisputed facts in the case not only authorizes, but requires, judgment upon the verdict. *Exceptions overruled.*

APPLETON, C. J., DICKERSON, BARROWS, VIRGIN and LIBBEY, JJ., concurred.