# CHARLESTON.

MALLEABLE COAL COMPANY V. JAMES POTTER *et als.*

Submitted October 4, 1921.    Decided October 11, 1921.

1.  APPEAL AND ERROR—*Demurrer Incorporated with Answer but Not Filed or Acted Upon Will be Disregarded.*

    A demurrer incorporated in a paper with an answer, but not in any way filed nor acted upon as a demurrer, is disregarded and treated as a fugitive paper, because not shown to have been brought to the attention of the court, notwithstanding the filing of the paper as an answer to be used as an affidavit, on a motion to dissolve an injunction. ((p. 215).

2.  RAILROADS—*Cannot be Compelled to Operate Temporarily Constructed Side Track on Land Under Privilege Terminable at Landowner's Will.*

    A common carrier railroad cannot be required by any judicial process, to reconstruct and operate a side-track or other facility temporarily constructed and operated on land adjoining its right of way, under a verbal and gratuitous permission of the owner of the land and an agreement between him and the owner of the railroad, that the privilege so granted should be terminable at the will and option of the owner of the land. (p. 217).

3.  SAME—*Side Tracks Constructed Under Lease Held Removable by Landowner..*

    Uncontradicted testimony of such owner and the operators of such railroad to the effect that such track or facility was not constructed and operated within the limits of a lease executed by the former to the latter, which is very general and indefinite as to the land covered by it, aided by conduct amounting to a practical construction of the lease, excluding the location in question from it, warrants the dissolution of an injunction inhibiting the land owner from tearing up such track and commanding the railway company to resume the use of it. (p. 217).

Appeal from Circuit Court, Lincoln County.

Suit by the Malleable Coal Company against James Potter and others, and from a decree dissolving an injunction inhibiting the defendant Roman Pickens from interfering with the operation of a railway, plaintiff appeals.

*Affirmed.*

*Price, Smith, Spilman & Clay,* and *D. E. Wilkinson,* for appellant.

*Murray Briggs,* for appellee.

POFFENBARGER, JUDGE:

Appellant, the Malleable Coal Company, complains of an order of the Circuit Court of Lincoln County, entered in vacation, dissolving an injunction inhibiting the appellee Roman Pickens, from interfering with the operation of what is called the tipple track of the Cobbs Creek Railway, and especially from tearing up that track, and commanding the appellees, James Potter and Charles Morgan, alleged owners and operators of said railway, without discrimination against said Malleable Coal Company, to haul its coal over said tipple track, for dumping into railway cars on a sidetrack of the Coal River branch of the Chesapeake and Ohio Railway.

The theory of the bill and of the injunction order awarded thereon is that the Cobbs Creek Railway is a common carrier, and, as such, wrongfully ceased and refused, on or about September 18, 1920, further to haul coal of the plaintiff from its mine situated somewhere on the main line of the railway, in the Cobbs Creek Valley, over said tipple track, at the instance, and by reason of the protest of the defendant, Roman Pickens, on whose land said tipple track is located; and that, soon after September 27, 1920, the Public Service Commission of this state having ordered said railway company to resume the hauling of the plaintiff's coal, Pickens and his employees wrongfully tore up portions of that track and thus prevented obedience to the order.

The temporary injunction inhibited Pickens from further molestation of the track and required the railway company to restore the portion of it that had been torn up and resume and continue the hauling of the coal.

If the facts disclosed by the pleadings and the depositions taken and filed justified dissolution of the injunction, it will be unnecessary to enter upon any inquiry as to the propriety of the remedy invoked by the plaintiff. Sufficiency of the bill was not tested by any demurrer thereto. In a paper filed by him, the defendant, Pickens, demurred to the bill

and answered it, but that paper was not filed as a demurrer. On the hearing of the motion, it was filed as an answer, together with the answer of Charles Morgan filed in the same way, and treated as an affidavit. A demurrer incorporated in the body of an answer, but not mentioned or referred to in the caption thereof, nor in any decree or order in the cause, is disregarded and treated as a fugitive paper, because it does not appear to have been brought to the attention of the court. *Pheasant* v. *Hanna,* 63 W. Va. 613. It is not perceived that mention of the demurrer in the caption can make any difference. The paper was never filed as a demurrer and the caption is not material. Nothing in the order suggests consideration of the bill as to its sufficiency.

The Cobbs Creek Railway is a narrow-gauge road built primarily for the hauling of logs and lumber, about the year 1906, by the Mohler Lumber Co., in conjunction with one W. W. Smoot, the former furnishing the materials and the latter doing the construction work, with the understanding that he should have forty-five per cent. of the profits arising from the operation of the road, and the Lumber Company fifty-five per cent. Near the mouth of Cobbs Creek, it connected with what was then the Coal River Railroad, now the Coal River Branch of the Chesapeake and Ohio Railway. At that point, it was necessary to pass over the land of Pickens, for some distance, and the Mohler Lumber Company procured a lease of about two acres of the Pickens land, within which the main line and a side-track called the loading track and some other terminal facilities were located. The track now in controversy, the tipple track, was not built at that time, nor until the year 1917. Nor is the Mohler Lumber Company lease very important now since it expired in the year 1913. Lumber and timber transportation over the road, by the Mohler Lumber Company, seems to have terminated about the year 1909, and, early in that year, the operators of the road began to transport oil well supplies over it up into the Cobbs Creek region of country. Thereupon a controversy is said to have arisen between Pickens and the lumber company, as to right in the latter to transport anything other than timber and timbering supplies over the land. Smoot says he became

the sole owner of it in July 1918, and operated it until September 1, 1919, on which date it passed into the hands of James Potter and Company, under a contract of purchase, made about July 1, 1919. Smoot may have owned the road individually at an earlier date.

He operated it under the arrangement between himself and the Mohler Lumber Company, or as his own, and constructed what is known as the tipple track in 1917, when he was paying Pickens rent at the rate of $75.00 per month. It seems to be about 500 feet long and turns off from the main line near the point at which that line emerges from the Cobbs Creek valley, and crossing level land between that line and the hill, runs up along the hillside to a point at which the tipple used by the Malleable Coal Co. stands apparently on the right of way of the C. & O. Railway, in part, and on the land of Pickens, in part. The ownership of the tipple seems to be conceded to the Malleable Coal Co., but by whom it was erected is not clearly disclosed. This track was never used for any purpose other than the transportation of the Malleable Coal Company's coal from its mine somewhere up Cobbs Creek to this tipple. Both Smoot and Pickens testify that it was constructed under a verbal permit given by the latter and without charge for the use and occupation of the land. Smoot says he hauled coal for the Malleable Coal Co. until December 1918, at which time that company closed its mine, but that Pickens had interrupted his use of it on two occasions, before he ceased to use it by reason of the closing of the mine. Pickens says he gave Smoot permission to use the land for that track until he should need it himself. Under the impression that he would have no further use for the track, Smoot took up the rails from it in March 1919. Between that date and July 1, 1919, he entered into negotiations with James Potter and Company, for sale of the railway to them for use in connection with their oil and gas operations in the Cobbs Creek country in which they had a lease of 12,900 acres of oil territory. The sale seems to have been made as of July 1, 1919, but, late in June of that year a flood damaged the railway, and Smoot had to repair it be-

fore the purchasers would consummate their contract.     In doing so, he used the rails taken from the tipple track.

On July 1, 1919, the date of the purchase of the railway, and after the rails had been taken from the tipple track and while the mine of the Malleable Coal Company was closed, James Potter and Company leased from Pickens, for a period of five years, at a rental of $100.00 per month, what is described as about a quarter of an acre of land, as being the same tract of land which was occupied by the terminal of the Cobbs Creek Railway, as having one office building, one hoisting house, one small freight house and one sand house on it, and as being then under lease by the month to the Cobbs Creek Railway Company. Under this lease the lessee has the privilege of renewal for an additional five years and also the privilege of termination, upon three months notice and the payment of all rentals, at any time within the term. Having coal in the land of the leased premises, Pickens made this reservation: "Right to load coal on and over the eastern part of the property hereby leased where the coal dumps are now located," if he should desire to do so.     The only dumps disclosed by the evidence, as being located on the eastern part of the leased property, are the loading tipple of the Malleable Coal Co., and what is called the Jarrett and Wright coal chute.     At a date not disclosed, Pickens had leased his coal to Jarrett and Wright and they had opened a mine in the hillside, near the right of way of the C. & O. Railway, and constructed a chute leading to a side track. Finding the dip of the coal to be in the direction of their mining, they discontinued their operation.     At a date not given, Pickens leased his land to Smoot and Carter for mining and they opened a mine and erected a tipple near the main line of the Cobbs Creek Railway, with intent to load the coal into the narrow-gauge cars of that road, for transportation over the main line and the tipple track and transfer thereof by means of the Malleable Coal Company's tipple, into the standard-gauge cars of the C. & O. Railway Co.

In August 1919, under a verbal permission given by Pickens, to James Potter and Company, operators of the Cobbs Creek Railway, the Malleable Coal Co. replaced the rails

on the tipple track, and began the shipment of coal over it to their tipple. At about the same time, Smoot and Carter endeavored to obtain permission of the Malleable Coal Co., to load their coal into C. & O. cars from the same tipple. Their request having been refused, they endeavored to obtain permission for the placing of box cars on the C. & O. Railway Co. side track, apparently owned or controlled by the Malleable Coal Co. This privilege having been denied, Pickens notified James Potter & Co. not to haul any more coal over the tipple track for the Malleable Coal Co., and, in obedience to this order, they ceased to do so. Thereupon, the Malleable Coal Company applied to the Public Service Commission of this state for an order requiring the railway to transport its coal. A temporary order was awarded, and then Pickens took up some of the rails from the track and thus prevented resumption of transportation. In this state of affairs, the Malleable Coal Company applied for and obtained said injunction.

It is manifestly unnecessary to determine whether or not the Cobbs Creek Railway is a common carrier. If it is, it does not follow that the tipple track is permanently or irrevocably located upon the land of Pickens. Whether the track in question belongs to that company or not is left in doubt by the evidence. It desired to haul the coal and the producer of the coal wanted it hauled. It obtained permission for restoration of the track, and the coal producing company restored it under that permission. It was originally built by the railway company as a tenant at will of Pickens and restored and the use thereof resumed in the same manner, except as to the reconstruction. The contention that Pickens leased the tipple to James Potter and Company is not well founded. The argument is that he must have leased it, because he reserved the right to use it, and that the lease of the tipple impliedly included a lease of the means of using it, namely, the tipple track. The terms of the reservation in the lease do not warrant this conclusion. Pickens reserved the right to load coal on and over the eastern part of the property at the point where the coal dumps were located. There are no words in the reservation fairly indicative of in-

tention to reserve right to use the Malleable Coal Co.'s tipple. The reserved right was to load coal over the eastern part of the property. The mention of the dumps was mere matter of description of the portion of the land the lessor reserved the right to use.

The indefinite lease giving no boundary lines, interpreted by the evidence bearing upon its meaning, found in the record, does not include the land on which the tipple is located. If the terms. ''Now under lease by the month to the said Cobbs Creek Railway Co.,'' could be treated as a reference to the lease given the Mohler Lumber Company, the land on which part of the tipple track is located is not within that lease, and that track was no part of the Cobbs Creek Railway terminal while the lease was in force, nor between the year 1913, in which it expired, and the year 1917. If the lease was continued as a verbal holding over from year to year, on payment of rental, it still cannot be regarded as embracing all of the land on which the tipple track is located. If the payments of rental from 1913 until 1917 were made merely for terminal facilities and did not continue the lease, the terminal facilities did not then include the tipple track. They included only the main track, the loading track, sand house, freight house; office and hoist. In the new lease taken July 1, 1919, the area of the leased land is described as being about a quarter of an acre. In the Mohler Lumber Company lease of 1906, the area is described as embracing about two acres. Hence. it is clear that there was no intention to lease, on July 1, 1919, all of the land that was in the former lease. Moreover, in 1919, the tipple track was not one of the terminal facilities of the railway. It was not then in operation. The rails had been taken from it and used for repair of the main line. Besides, it was not used for general railway purposes, but only for the hauling of the Malleable Coal Co.'s coal to its tipple. According to the evidence of Smoot and Pickens, it was not constructed under the monthly lease referred to in the later lease. It was a mere privilege outside of the lease, gratuitously and temporarily conferred. No witness expressly contradicts this testimony, nor do any established facts or circumstances overthrow it.

The grant and acceptance of this privilege amounted to a practical construction of the monthly lease by the parties thereto. Likewise, the conduct and circumstances attending the restoration of the track practically construed both the monthly lease and the new lease of July 1, 1919.

Upon this view of the evidence, including the situation, purposes and relations of the parties, we are of the opinion that the court below did not err in its dissolution of the injunction. The order under review is an interlocutory one, entered upon proof that is very incomplete as to some of the vital issues involved. It does not appreciably tend to sustain the contention of the appellant. Additional evidence to be taken for the final hearing and disposition of the cause may be sufficient to establish right to the relief sought, if the remedy adopted is appropriate.

For the reasons stated, the decree complained of will be affirmed.

*Affirmed.*