# CHARLESTON

PHEASANT *et al.* v. HANNA *et al.*

Submitted February 5, 1908.  Decided February 18, 1908.

| | |
|---|---|
| 63 | 613 |
| f64 | 513 |
| 65 | 45 |
| f65 | 278 |
| 65 | 536 |
| 65 | 543 |
| f65 | 599 |

1. EQUITY—*Forfeiture—Enforcement.*
   Equity will not enforce a forfeiture.  (p. 620.)

2. MINES AND MINERALS—*Lease—Cancellation.*
   A court of equity will not cancel a mining lease before the expiration of the term, for mere delay in paying rent or commutation money, and failure to commence operations at the time stipulated, if it appears that the lessees are ready and willing to pay the rent and perform the covenant to open and operate the mines.  (p. 619.)

3. SAME—*Forfeiture of Lease.*
   Equity will relieve a mining lessee from a mere technical forfeiture, on his performance of all covenants and duties imposed upon him by the lease, the rights of no third parties having intervened.  (p. 619.)

4. LANDLORD AND TENANT—*Tender of Rent.*
   A tender of rent to a landlord who has agreed to sell the premises, but, by a stipulation in the contract of sale, has the right to receive rents, issues and profits at the time of the tender, is sufficient.  (pp. 619, 622.)

5. APPEAL—*Objections Not Raised Below.*
   A demurrer incorporated in the body of the answer, but not mentioned or referred to in the caption thereof or any decree or order in the cause, will be disregarded as not having been brought to the attention of the court and treated as a fugitive paper.  (p. 620.)

Appeal from Circuit Court, Morgan County.

Bill by E. A. Pheasant and others against Henry N. Hanna and others. Decree for plaintiffs, and defendants appeal.

*Reversed.     Remanded.*

FAULKNER, WALKER & WOODS and D. C. WESTENHAVER, for appellants.

A. C. McINTYRE and H. H. EMMERT, for appellees.

POFFENBARGER, PRESIDENT:

A decree, declaring a certain lease for mining purposes, on a tract of land containing 17 acres, dated January 9, 1901, to have been forfeited, and perpetuating an injunction, restraining the assignees of the lessee from entering upon the premises, was pronounced by the circuit court of Morgan county on the 21st day of October, 1906, from which Henry N. Hanna, J. Frank Fields and William Beard have appealed.

The material facts are substantially as follows: Marion D. Wise, being the owner of said tract of land and an adjacent tract containing about 20 acres, together with her husband, F. S. Wise, executed a lease to H. H. Hunter on the 9th day of January, 1901, the purpose of which was to enable the lessee to mine and remove sand from said 17 acre tract and give the right of way through the adjacent tract to a small railroad, a branch of the Baltimore and Ohio Railroad. The consideration was one dollar and the covenants and agreements in the lease contained, to be performed by the lessee. These covenants were to pay for the material at the price of two cents per ton for first class and one cent per ton for second class sand; to begin the mining of sand on the land within one year from the date of the lease and diligently prosecute the same. The rights granted were "to mine, dig or blast and remove the sand from any and all of the lands owned by the parties of the first part on the east side of Warm Spring Ridge, between the town of Bath and Hancock station, on the Baltimore and Ohio R. R. in Morgan County, West Virginia," and the "privilege to mine and remove any and all sand from other lands through and over the premises of the parties of the first part;" a right of way at least thirty feet wide, through and over the lands.

of the lessors from said Warm Spring Ridge to the railroad, to be fenced by a good and substantial fence on both sides by the lessee, together with a sufficient quantity of land for the purposes of erecting necessary buildings and sidings to be used in the preparation of sand for shipment; and an option to lease the land for a period of ninety-nine years, or purchase the same in fee-simple at the price of $100.00 per acre, at any time within two years from the date of the lease. A forfeiture clause, expressed in the following terms, was inserted: ''Should from any cause the work of mining sand and shipping the same cease for the period of two years at any time, or fail to pay the sum of one hundred dollars annually which is to be deducted from the first royalty due, then this lease to be null and void.'' Subsequently, Hunter disposed of the lease by assignment, and John G. Fouse, I. K. Bechtol, S. F. Shelley and Nathan L. Chappelle, among whom there existed a sort of copartnership for speculating in, or operating on, lands of the character above described, became the owners of it. Differences having arisen among them, they failed to commence mining operations on the land, but made two annual payments of rental, and, in a suit instituted by Fouse, for the dissolution of the partnership and settlement of its business, the leasehold was sold on the 19th day of July, 1904, to Henry N. Hanna, for the sum of $500.00, and the sale was confirmed on the 7th day of October, 1904. In the meantime, Wise, on the 17th day of January, 1903, had entered into an executory contract for the sale of the land with E. A. Pheasant through her husband and agent, A. M. Pheasant, which was carried into effect on the 12th day of February, 1903, by a deed conveying the land, with a covenant of general warranty, to E. A. Pheasant, of Windber, Pa., and J. F, Swope, of Colfax, Pa. On the 17th day of January, 1905, another general warranty deed was executed by Mrs. Wise, conveying the adjacent tract to the same parties. No reference is made in either of these deeds to the lease. In the month of May, 1905, Hanna, J. Frank Fields and William Beard, whom he had associated with him in respect to this lease, began to cut timber on the premises and make surveys for rights of way and otherwise indicate their purpose and readiness to begin mining on the property, and, on the 29th day

of May, 1905, this suit was instituted by E. A. Pheasant, A. M. Pheasant and J. F. Swope for the purposes above stated.

The defendants relied upon payment of the rental or commutation money for the first and second years and tender thereof for the third and fourth years, estoppel *in pais*, by reason of the presence of A. M. Pheasant at the judicial sale at which Hanna had purchased and actual bidding on the leasehold at said sale by one A. Morgret, an alleged agent of Mrs. Pheasant; and *res judicata*, predicated on the fact that Marion D. Wise and her husband had beed parties to the suit in which the sale was made.

It is admitted that the commutation money was paid for the years 1901 and 1902. The lease did not specify at what time payment should be made and none was made at the beginning of either year, but for the first two years the payments were made and accepted after the beginning thereof. On the 27th day of January, 1903, about ten days after Wise had contracted the sale of the land to Pheasant, A. C. McIntire, member of a firm of attorneys for Fouse and Bechtol, in the suit brought for the dissolution of the copartnership, received a check for $100.00 with which to pay the rental for the year 1903 and notified Wise of his possession thereof and asked him to come and get it. Wise came a day or two later and declined to receive the check, saying the lease had expired and was void. Thereupon, McIntire had the check cashed and called upon Marion-D. Wise and tendered her the money. She also refused to accept it, saying sand had not been mined within the year, payments had not been made according to contract, and further that they had sold to Pheasant and could not take the money. McIntire then deposited it in bank at Martinsburg. Sometime in September, 1904, A. M. Pheasant, pursuant to a request, called at the office of Fouse in Pittsburg and accompanied him, at his request, to the office of his attorney, where he spoke of the Wise lease and suggested payment of money on account thereof to Pheasant, whereupon Pheasant replied that he had no right to receive any money on the lease, saying he had transacted the business for his wife and Swope and had turned all of the papers over to them, and that any business pertaining thereto would have to be

transacted with them, and the attorney then so advised Fouse, who said "All right, we will have to do that." Somewhere between the fifth and ninth days of January, 1905, Hanna caused to be drawn the check of the West Virginia and Pennsylvania Sand Company for $100.00, payable to the order of Mrs. E. A. Pheasant, and certified by the International Trust Company of Maryland, and enclosed it in a registered letter, addressed to Mr. E. A. Pheasant, at Windber, Pa., on which a special delivery stamp was placed, which letter was returned and received by him on the 11th day of January, 1905, marked "Refused." A. M. Pheasant testified that notice thereof had been received by Mrs. Pheasant, at Winber, late in the evening of January 9, 1905, and that it was refused because it appeared, from the card on the envelope, to have been sent by a pottery company of Baltimore. Being asked why neither he nor his wife opened and read it he said: "We had no business with those people that we know of." Being asked if he did not know it contained a money order or draft for the rental, he replied that he did not know what it contained.

For the third year an absolutely good tender was undoubtedly made. The executory contract of sale entered into between Wise and Pheasant on the 17th day of January, 1903, provided that possession of the premises should be delivered to Pheasant, his heirs or assigns, on the first day of April, 1903, and that, until that time, Wise should be entitled to have and receive the rents, issues and profits thereof. The deed was not executed nor the purchase money paid until the 12th day of February, 1903. On the 29th day of January, a check for $100.00 was tendered to Frank S. Wise, who declined it, not because the paper offered was not a legal tender, but because he thought the lease had expired and was void. On or about the 12th day of February, actual cash was tendered Mrs. Wise and she refused it for the same reason, and the further reason that she had sold the land to Pheasant. By the express terms of her contract with Pheasant, she was entitled to hold possession of the land until the first day of April, 1903, as well as to receive the rents. Besides, the lessees had the right to pay the commutation money for the year 1903 on the 9th day of January, 1903, or any day thereafter within the year. Pheasant

could not accept it, for he was not entitled to receive any rent until the first day of April, 1903. By their stipulation respecting the apportionment of rent, to which the lessees were not parties, they could not deprive the latter of the right to pay the rent and keep the lease alive. They had the right to pay it and the apportionment was a matter between Wise and Pheasant. There was no suggestion from F. S. Wise of want of authority to receive the rent on January 29, 1903. On the contrary, he impliedly admitted such authority, by denying the right of the lessees to pay it. He seems to have been the active party in negotiating the sale of the land and had collected the two previous payments of rent. This tender kept the lease alive until January 9, 1904. Thereafter the lessees had the right to pay it at any time prior to the 9th day of January, 1905. An attempt to pay it to the husband of Mrs. Pheasant was made by Fouse in Pittsburg in September, 1904, but he was prevented from making an actual tender, or rather excused from so doing, by the representation on Pheasant's part, that, although the husband of Mrs. Pheasant and her agent in effecting the purchase of the property, and evidently for the purpose of watching the progress of affairs relating to it, inasmuch as he was on the ground on the day on which the lease was sold, and the local agent of Mrs. Pheasant, A. Morgret, actually bid on the property in his presence, he was not the agent of Mrs. Pheasant for the purpose of receiving the commutation money. Then having received the registered letter on the evening of the 9th of January, 1905, which he must have known had been mailed a day or two previously, and had every reason to suspect contained a remittance of the rental, he returned it unopened and unexamined, thereby showing a disinclination to allow payment of the rental, which indicates insincerity and untruthfulness in his representation to Fouse in Pittsburg of want of authority to receive the money. Taking his conduct at the sale in connection with the bidding for the lease by his wife's agent in his presence, his conduct in Pittsburg and in respect to the registered letter, in connection with the fact that he had taken a conveyance of the land on which the lease was with a covenant of general warranty, with knowledge of the existence of the lease, and his

attempt to rely upon forfeiture for non-payment of rental for the year 1903, and considering it all together, his intention to avoid the receipt of the money, without disclosing such purpose to the lessees, becomes apparent. There was no effort in Pittsburg to pay the money, it is true, but Pheasant took precaution against an offer to pay it by the representation of inability on his part to receive it. It was actually tendered to Mrs. Pheasant one day after the expiration of the year. Pheasant knew the purchasers of the lease had invested $500.00 in it and of this his wife was no doubt cognizant, too. In view of all the circumstances, we are of opinion that Mr. Pheasant was authorized to receive the money when it was ˙virtually tendered him in Pittsburg, and, therefore, has the effect of excusing it, or at least, depriving his principal of the power to declare a forfeiture after having had the money offered within twenty-four hours of the, expiration of the period within which she would have been technically, as well as equitably and morally, bound to receive it.

Technically, the lapse of one day after the expiration of the year may have constituted a forfeiture. It could not amount to more than a technical forfeiture. By the tender made on the 9th day of January, 1905, the lessees offered full and complete reparation for all the injury occasioned by the delay. The term of the lease had not expired. In point of time it was an indefinite lease. The option for a 99 year lease or the purchase of the land in fee simple within two years, did not designate the end of the term. It constituted a mere refusal or option on the part of the lessee to make a new contract, a purchase of a term for 99 years, or of the land in fee simple. The expiration of the two years did not put an end to the term as in the case of *Bettman* v. *Harness*, 42 W. Va. 433, nor as did the expiration of one year in the case of *Starn* v. *Huffman*, 59 S. E. 179, the decisions in which are relied upon as authority for the position that equity will, under the circumstances here disclosed, cancel a lease for failure to prosecute the work of mining so as to make the mine yield royalty to the lessor. We are of opinion that this is a case in which a court of equity, rather than entertain a bill to enforce a technical forfeiture, ought to relieve against it, if

necessary, under principles declared in *Craig* v. *Hukill*, 37 W. Va. 520, *Railroad Co.* v. *Town of Triadelphia*, 58 W. Va. 487, and *Spies* v. *Railroad Co.*, 60 W. Va. 389. The language of these cases is that equity will never enforce a forfeiture, but will always relieve from a technical forfeiture, when no pecuniary or substantial injury has resulted and full performance of the covenant or condition can, and will be, effected. The bill in this case, on its face, discloses possession of the premises and preparation for prosecution of the work of mining and paying royalties on the part of the lessees, and shows no injury to the lessors except delay in payment of the commutation money, nor any act on their part tantamount to a declaration of forfeiture. The defendants were asserting no claim of title otherwise than under the lease, and would have been bound to pay the stipulated price for all sand removed, so that, in the view of a court of equity, no injury could have resulted to the lessors from the prosecution of the work. Though there was no covenant to pay the rent or commutation money, irreparable injury or want of legal remedy could not be predicated upon the lack thereof, for all rents paid were to be treated as credits or payments on account of royalty. If the work of mining had been prosecuted, the royalties would have satisfied the unpaid rent, since the rent paid was, by the terms of the contract, nothing more, in reality, than advance payments on account of royalty. As all this appeared on the face of the bill, we are of the opinion that it was insufficient and should have been dismissed on demurrer, if a demurrer thereto was interposed, and the plaintiff remitted to their legal remedies for the enforcement of the alleged forfeiture.

It is denied, however, that any demurrer was filed, and none is mentioned in any decree or order entered in the cause; but a paper entitled the joint and separate answer of the defendants and designated as such in the order filing it, contains this clause: "These respondents reserving to themselves the benefit of all just exceptions to the said bill for its many imperfections and inconsistencies, and now demurring thereto for its want of equity, without waiving the benefit of said exceptions and demurrer, * * * answering say" &c. As no order or decree recites the filing

of a demurrer, and the paper in which it is said the defend-
ants demurred is not styled a demurrer, we are of the
opinion that in legal contemplation there was no demurrer.
The insufficiency of the bill does not appear by any order
made to have been brought to the attention of the court,
though it may have been in point of fact. What is relied upon
as a demurrer is analogous to an exception to a deposition
to which the attention of the court does not appear to have
been directed, and we think it must be regarded as tanta-
mount only to a mere fugitive paper.

As the defendants were impleaded in a court of equity,
though on an insufficient bill, they could waive its defects,
and, being entitled to have cross-relief in the same court,
growing out of the subject matter of the bill, namely, relief
from the forfeiture, on payment of the amount due, and
having conditionally prayed such relief in their answer,
the court should have permitted them to pay the money due,
and, on payment thereof, adjudged the lease to be in full
force and effect and dissolved the injunction. In this re-
spect, the case is not within the rule declared in *Spies* v.
*Railroad Co.*, 60 W. Va. 389, 394, requiring dismissal of a
cross-bill, when the bill fails for want of jurisdiction. That
rule is. limited to answers merely defensive in character.
This is not. It asks that the defendants be declared entitled
to relief from a technical forfeiture and quieted in their pos-
session of the premises. This conclusion seems to be in
accord with the principles applied in *W. & E. R. R. Co.*
v. *Triadelphia*, 58 W. Va. 487, in which the railroad com-
pany was, by injunction, relieved from a technical forfeit-
ure, on its performance of the omitted conditions. Here,
it is apprehended, a court of equity would afford the de-
fendants relief, by enjoining an action of unlawful detainer
or ejectment, and as they are in court and asking relief in
anticipation of such an eventuality, there is no good reason,
technical or other kind, why it should not be granted. In
*Spies* v. *Railrond Company*, there was no sum of money to
be paid or other thing to be done by the defendants as to
which they appeared to have been in default. The matter set
up in the answer was purely defensive, and an injunction
was sought in aid of the defense. The answer in this case
has a double aspect. It denies forfeiture, and then prays

relief from forfeiture in case the court shall find the defendants have made default.

That the money was not brought into court and the tenders kept good is urged against this conclusion, but the objection is groundless. If the tender had been relied upon to defeat recovery of interest and costs, this would have been necessary, but nothing is claimed for it except that it prevented forfeiture for the year 1903. The difference between sufficiency for the latter purpose and sufficiency for the former is perfectly obvious. It does not lie in the mouth of a man to whom performance of a condition or covenant has been offered and who has declined it, to say the other party is so far in default that he can have no benefit of his contract. On the other hand, if the tenderer wants to relieve himself from liability for interest and costs, he must keep the money ready at all times and bring it into court. That it was not necessary to do so in order to effect the purposes sought by the defendant, has been repeatedly affirmed impliedly or expressly by many decisions of this Court. Instances of it will be found in suits in which tax sales and deeds have been set aside.

For the reasons stated, the decree will be reversed, the injunction dissolved and the cause remanded, with directions to enter a decree, on the payment by the defendants of all rental due the plaintiffs at the time of the institution of this suit, with interest thereon, declaring the lease valid and binding and to be in full force and effect.

*Reversed. Remanded.*

Brannon, Judge, (*dissenting:*)

I dislike to differ with other members of the Court, but also dislike to be recorded as assenting to legal propositions from which I dissent.

I do not agree to point five. It is settled that a demurrer may be incorporated in an answer. *Cook* v. *Dorsey*, 38 W. Va. 196: *Matthews* v. *Jenkins*, 80 Va. 463. The order book shows the filing of an answer, but fails to call it a demurrer and answer. It was admitted in conference that if it had been so called the demurrer would be good. It has no heading "Demurrer and Answer." It has no heading "answer."

If that alone excludes the demurrer, why does it not 'condemn it as an answer? My opinion is that the order makes that document, that pleading called by it an answer, a part of the record, and being so, the court must read it all—the demurrer part as well as the answer part—because both matters of law and fact are in that pleading, one as well as the other. Now, for the first time at the hearing want of equity can be raised, without demurrer, and I can't see why this express demurrer can be ignored. I am persuaded that it is contrary to established practice. I doubt whether orders call such a pleading demurrer and answer—only answer.

The rule of practice is entirely too rigid and technical.