## CHARLESTON.

R. A. BICKEL v. R. W. SHEPPARD.

- (No. 5193.)

Submitted February 17, 1925.   Decided February 24, 1925.

1. CONTRACTS—*Forfeiture Provisions Always Strictly Construed Against Party for Whose Benefit They Were Inserted.*

   Forfeiture provisions in a contract are always strictly construed against the party for whose benefit they were inserted. (p. 308.)

   (Contracts, 13 C. J. § 512.)

2. TENDER—*Certified Check is not Legal Tender of Payment; On Refusal of Certified Check on Ground Not Solely That it is Not Lawful Money, Debtor Does Not Have to Tender Money.*

   It is a general rule that tendering a certified check in payment of an obligation is not a legal tender; but where such check is refused not solely on the ground that it is not lawful money, but upon some other ground which is not well taken as, for instance, that it is not drawn for so much as the creditor demands, and it is apparent that the lawful money if offered would be refused, it is not incumbent on the debtor to tender the money. (p. 309).

   (Tender, 38 Cyc. p. 147.)

3. CONTRACTS—*Rescission, to Be Effective, Must Be in Toto; Offer Must Be Made to Put Parties in Statu Quo as Far as Reasonably Possible.*

   Rescission of a contract to be effective must be in toto, and and an offer made to put the parties in statu quo as far as it may be reasonably done. (p. 310).

   (Contracts, 13 C. J. §§ 678, 682.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Cabell County.

Action by R. A. Bickel against R. W. Sheppard. From a judgment for plaintiff, defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Livezey & McNeer,* for defendant in error.

*T. W. Peyton,* for plaintiff in error.

LIVELY, PRESIDENT:

In this action of unlawful detainer by Bickel against Sheppard for possession of a house and lot in the City of Huntington, the court instructed the jury to find for plaintiff, and defendant prosecutes this writ of error.

Defendant defended his possession by virtue of a contract of purchase with plaintiff, dated April 2, 1923. It appears that Bickel was manager in this State and eastern Kentucky for a life insurance company of New York, and for some time prior to the date of the agreement of sale and purchase of the house and lot involved, Sheppard had been in his employ as a special agent in the sale of life insurance and there was an unsettled account between them subject to credits from time to time in favor of Sheppard when premiums were collected on the insurance sold by him. It appears also that for a year or so previous to the written agreement of sale and purchase there was a verbal agreement of sale existing between them by which Sheppard had occupancy and possession of the house. This verbal agreement, whatever its terms were, was merged in the written agreement of April 2, 1923. This latter agreement is the basis of this controversy, and the construction of which by the lower court furnishes the point of error involved. The material parts of the agreement will be set out. In consideration of the mutual covenants therein, Bickel agreed to sell and Sheppard agreed to buy the house and lot for $5,000.00 to be paid within one year from the date of the agreement, with interest payable quarterly on the unpaid balance of the purchase price. Recitation of the insurance account existing between the parties subject to the credits from time to time as above set out is made, and it was stipulated that Bickel should not be required to transfer the property to Sheppard until the latter had made full settlement and payment of the insurance account, but should hold

the title to the real estate to secure payment of that account. Upon payment of the purchase price and the balance of the insurance account a general warranty deed free from all liens and incumbrances was to be made by Bickel, taxes and paving assessments to be assumed by Sheppard. The sale agreement contained a forfeiture clause over which the controversy is waged, which clause is:

> "If the Buyer shall make default in the quarterly payment of interest on the purchase price as herein required, or if at the end of one year from the date hereof the Buyer shall not have paid anything on account of the principal of the purchase price aforesaid, or in either of such events, the Seller may, at his option, terminate this contract and after notice from the Seller to the Buyer of the Seller's election to terminate this contract for any such default, all right of the Buyer shall thereupon cease under this contract and all payments which the said Buyer may have made on account of the interest shall be taken and treated as liquidated damages for such default and as and for rental for the use and occupation of said premises, and in the event of such termination of this contract the Buyer shall immediately vacate and surrender said premises."

Sheppard, being in possession of the house under the verbal agreement, continued in possession and on April 29, 1923, twenty-seven days after the date of the agreement, paid defendant by check $450.00 as interest up to that date. Thereafter he paid Bickel by check the regular quarterly payments of interest on the purchase price and also $59.90, by check of November 30, 1923, to cover the taxes which were assessed in Bickel's name. On March 29th, 1924, Sheppard enclosed a check certified by the bank on which it was drawn for the sum of $50.00, in a letter to Bickel, with the statement that the check payable April first was to be applied in reduction of the principal purchase price on the contract of sale dated April 2, 1923. This letter and check were received by Bickel on April first, and the check was immediately mailed back to Sheppard in a letter which stated, "Because of the fact that the total purchase price on your contract is due and pay-

able within one year from April 2, 1923, and the amount of the check is so small when compared to the total purchase price, and the further fact that such check is not legal tender, I am returning the same unused." This letter and returned certified check were received by Sheppard on April 2, 1924, between 1 and 2 o'clock P. M. On the following day, April 3, 1924, Bickel served notice on Sheppard referring to the written agreement, and notifying him as follows: "You will please take notice that because you have defaulted in the payment of the purchase price within the time and manner as provided for in said contract, and because you have defaulted in the payment of special assessments against said property, I the undersigned R. R. Bickel, have elected to rescind and terminate said contract bearing date April 2, 1923, and you are hereby notified to forthwith vacate and surrender possession of such premises now occupied by you and being premises known as No. 201 West Eighth Avenue, in the said City of Huntington."

It will be observed that Bickel, in his letter of April 1, 1924, refused to accept the ·certified check for $50.00 because it was too small when compared to the total purchase price, and the further fact that such check was not legal tender; and by his notice served the following day demanded possession because of default in the payment of the purchase price within the time and manner as provided for in the contract, and because of default in the payment of a special assessment against the property, on which grounds he based a rescission of the contract.

The controlling questions presented are: 1. Did Sheppard forfeit his contract? 2. Did Bickel have the right to rescind and take possession? It is well settled that forfeitures are looked upon with disfavor. Forfeiture provisions in contracts are strictly construed. These principles are too well established to need citations of authority. It will be noted that the purchase price of $5,000.00 was to be paid within one year, but no forfeiture could be declared if it was not so paid. Forfeiture could be invoked only because of failure to pay the quarterly instalments of interest and failure on the part of Sheppard to pay something on the purchase price with-

in the year. It is reasonably clear that the payment of the entire purchase price within the year was not of the essence of the contract; for if any amount was paid on the principal within that time there was no forfeiture of the agreement. If time is not of the essence of the contract non-payment of the purchase price at the time stipulated in the contract will not of itself authorize a rescission or forfeiture by the vendor. "It will ordinarily be inferred that interest on the defaulted payment will be a sufficient compensation for the delay, 'compensation' and not 'forfeiture' being a favorite maxim with a court of equity." 39 Cyc. page 1368. The failure to pay the special assessments would not operate as a forfeiture or be ground for a rescission, because by the very terms of the contract forfeiture could be brought about only by failure to pay the instalments of interest and failure to pay something on the purchase price within the year. It is conceded that the interest instalments were promptly paid, but it is not conceded by Bickel that there was a payment on the deferred purchase price. The reasons he gave for refusal to accept the $50.00 represented by the certified check, were two-fold; one being that the payment was too small when compared with the total purchase price, and the other that the check was not legal tender. The first reason is not tenable on which to base a forfeiture, because by the very terms of the agreement if *anything* was paid the forfeiture could not occur. It was not for him to base a forfeiture upon the relative amount of the payment as compared with the principal. For the same reason he could assert that a one-third or one-half payment would not be sufficient and would work a forfeiture. The refusal to accept the certified check was not based entirely upon the fact that it was not legal tender. It was apparent that he would have refused that payment in cash, for the check was certified, the credit of the bank in the near vicinity was pledged to its payment and the amount of money could have been realized in less time than it took to return the check. Payments of interest during the year and the payment of taxes had been made by check, and were accepted by Bickel without protest. And under these circumstances Sheppard could well rely upon that method of

payment. He took the added precaution to have the check certified so that no question could be raised as to its prompt payment. Greenleaf says in Sec. 601 of his work on Evidence, "If a tender is made in a bank check, which is refused because it is not drawn for so much as the creditor demands, it is a good tender." "A tender required by contract will be waived by a party in whose favor it was required, by any acts or words on his part showing that it would not be received." *Blessing* v. *Hoyle,* 1 White & Wilson (Texas Civil Appeals) Sec. 289, page 118; *Mattocks* v. *Young,* 66 Me. 459. Where it is apparent that a payment will not be received if tendered in money, it is not necessary to make tender. A vain thing is not required. *Koon* v. *Snodgrass,* 18 W. Va. 320; *Shank* v. *Graff,* 45 W. Va. 543; *Belknap* v. *R. R. Co.,* 79 W. Va. 691; *Casto* v. *Cook,* 91 W. Va. 209; *Parker* v. *Perkins,* 8 Cush. (Mass.) 318. It is apparent that Bickel would not have accepted the $50.00 in cash had it been tendered to him; for the amount, and not the medium of payment, was the reason of the refusal. It is a highly technical point on which to base a forfeiture, a thing in high disfavor in the eyes of the law.

Was Bickel justified in declaring a rescission and cancellation of the contract, as set out in his notice for possession? "Rescission, however, is a *right* of the complainant, and not a means for the assertion thereof; it is an *equity,* rather than an equitable remedy." Bispham's Principles of Eq. Sec. 472. Rescission seems to be limited generally to cases where there is a palpable and material mistake concerning the subject matter or when fraud or misrepresentation have been perpetrated in the formation of the contract. *Powell* v. *Berry,* 91 Va. 568. Where a contract is rescinded the general rule is that it must be rescinded in toto and the parties placed in statu quo. *Sugar Refining Co.* v. *Grocery Co.,* 90 W. Va. 730; *Worthington* v. *Collins,* 39 W. Va. 406. Bickel would rescind, and under the contract the quarterly payments of interest would be treated as liquidated damages for the possession of the house; but it will be observed that Sheppard paid taxes to the amount of $59.90. There is no agreement that such sums should be included as

liquidated damages, and there is no offer to return this amount. The matters arising on the question of rescission would be more properly considered in a court of equity, and throw little light upon the question of the right of possession which is the only right involved in this proceeding. It appears that a suit was pending between the parties for a settlement of the insurance account between them, and defendant on the trial expressed his willingness and averred his ability to then and there pay in full the purchase price if he could obtain a deed; although it is in evidence that he had in March, 1924, stated that he could not pay and asked for more time. Under these facts we think the court was in error in holding as a matter of law that the contract had been forfeited, or that the plaintiff had the right to rescind. The judgment will be reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*