GUY MCCARTNEY *v.* O. S. CAMPBELL

(No. 7644)

Submitted November 1, 1933.    Decided November 21, 1933.

*Hugh R. Warder* and *Francis L. Warder,* for appellant.
*Wyckoff & Wyckoff,* for appellee.

HATCHER, JUDGE:

Plaintiff McCartney is the vendee of certain real estate sold to him by defendant Campbell in 1928 under a written contract. In this suit, plaintiff seeks to have an accounting, and specific performance of the contract. The circuit court denied him any relief and he appealed.

The contract, made October 6, 1928, provided that the consideration for the land should be $3,500.00, to be paid in installments of not less than $25.00 a month and that at least $500.00 and its interest should be paid annually (pursuant to which seven annual notes of $500.00 were executed by McCartney to Campbell); that when $2,000.00 of the purchase price with accrued interest was paid, a deed should be made to the plaintiff and a vendor's lien reserved to secure the balance; but that if McCartney failed to pay any monthly installment or if he failed to pay $500.00 (with interest) at the end of each year, Campbell should treat the amount

theretofore paid as rental and upon written notice the contract should become null and void and McCartney should, without further notice, surrender the real estate to Campbell. McCartney entered into possession of the real estate and from time to time made a number of payments to Campbell. A written notice, vacating the contract was given him by Campbell on April 28, 1932. An action of unlawful entry and detainer followed, in which on May 9, 1932, the following proceedings were had: Campbell recovered a judgment against McCartney for the possession of the property and immediately had McCartney dispossessed by a writ from the justice; McCartney tendered the justice an appeal bond and asked for an appeal but was refused; then McCartney applied to and obtained an appeal from the circuit court. Upon the filing of the bill in the instant suit, Campbell was enjoined from preventing McCartney retaking possession of the real estate. In the final order that injunction was dissolved and a writ of possession awarded Campbell.

On conflicting evidence, the circuit court found that at the date of the notice plaintiff was behind on his payments, and pursuant to the prayer of defendant's answer, forfeited the contract and awarded defendant a writ of possession. Plaintiff admits the futility of advancing any argument against the finding as to the payments, and does not do so. He raises the legal proposition, however, that instead of forfeiting his contract, etc., on that finding, the court should have ascertained the balance due, should have given him a day in which to pay the balance, and then in case of his default decreed a sale of the property and in that manner foreclosed his equity therein.

In 1892 this Court reasserted the old doctrine—"Equity will not enforce a forfeiture"—saying there seemed to be no change or modification of the rule in modern decisions. See *Craig* v. *Hukill*, 37 W. Va. 520, 523, 16 S. E. 363. Lawrence on Eq. Jurisprudence, sec. 152, published in 1929, indicates a present trend toward some qualification of the rule. Equity's abhorrence of forfeitures may not be so extreme as in former years. But be that as it may, equity will continue to look "with disfavor upon forfeitures, and will not be quick, active or alert to see or declare or enforce them." *Hukill* v. *Myers*, 36 W. Va. 639, 645, 15 S. E. 151, 152. And forfeitures still

remain so obnoxious to judicial minds that "slight circum-stances are eagerly seized to avoid their enforcement when the substantial rights of parties insisting thereon can other-wise be adequately protected." *Geffert* v. *Geffert*, 98 Kan. 57, 59, 157 P. 384, 385. More than *slight circumstances* for such avoidance exist in this case, viz: The amount payable under the contract at the date of the notice of forfeiture was about $1,650.00. The circuit court found that plaintiff was entitled to credits amounting to $1,430.00. He claimed further credits of some $2,800.00. The account between the parties extended over a period of more than three years and embraced numerous transactions including sales of horses, the care and training of horses, sales of an automobile, of a saw mill and of walnut logs, shares in farm crops, and payment of taxes. However erroneous may have been plaintiff's belief in the credits he was disallowed, the evidence shows that he had substantial grounds for claiming some of such credits. Moreover, he has paid out in this litigation far more in witness fees and other costs than the amount of his arrears at the time defendant declared the contract forfeited. So we cannot doubt that his position in the matter of payments was assumed in good faith. His failure to meet fully his purchase installments was not intentional or willful. The record does not indicate that defendant suffered any material injury from plaintiff's delay in performance. Where compensation can be made, relief ordinarily goes in equity *as a matter of course,* for the non-performance of pecuniary covenants. *Railroad Co.* v. *Tria-delphia,* 58 W. Va. 487, 516, 52 S. E. 499. Interest will seemingly be sufficient compensation in this case. Therefore, plaintiff's delay should have been disregarded and he should have been given a day in which to pay the balance due. *Abbott* v. *L'Hommedieu,* 10 W. Va. 677, 713. "A forfeiture caused by the non-payment of money, however express may be the language of the contract, will, as a general rule, be relieved from, on the theory that interest is a sufficient com-pensation. But the failure to pay must not be willful, nor the delay in payment be unreasonably long, and the plaintiff seeking relief from his default must show that it was not intentional and has not caused irreparable injury to the defendant." Pomeroy's Specific Performance, (3d Ed.), sec.

335.  Accord: Waterman on Spec. Perf., sec. 435, and the following authorities on Equity Jurisprudence: Pomeroy (4th Ed.), sec. 455; Story (14th Ed.), secs. 1727 and 1732; Beach, sec. 1013; Lawrence, sec. 157; C. J., pp. 104-5.

The decree of the circuit court is accordingly reversed and the cause remanded.

*Reversed and remanded.*