422 S.E.2d 512

**Thomas F. FRALEY, Leslie D. Fraley and Norman G. Fraley, Plaintiffs Below, Appellees,**

v.

**FAMILY DOLLAR STORES OF MARLINTON, WEST VIRGINIA, INC., Defendant Below, Appellant.**

**No. 21002.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 1992.

Decided Oct. 8, 1992.

**36**

Jerry D. Moore, Franklin, for appellees.

George G. Guthrie, Thomas P. Larus, King, Betts & Allen, Charleston, George I. Sponaugle, II, Sponaugle, Sponaugle & Bowers, Franklin, for appellant.

PER CURIAM:

Family Dollar Stores of Marlinton, West Virginia, Inc., appeals the decision of the Circuit Court of Pendleton County finding that Family Dollar had forfeited its lease with Thomas F. Fraley, Leslie D. Fraley and Norman G. Fraley by failing to pay rent. On appeal, Family Dollar argues that the circuit court erred in determining that it owed the Fraleys $16,497.25 for the 1990 rent, and in declaring a forfeiture of the lease based on a good faith dispute concerning the rent owed. Because we agree that the circuit court erred, we reverse the decision of the circuit court.

On October 22, 1985, Family Dollar leased a store in a shopping center in Franklin, Pendleton County from Homer Glover, Jr. and Bonnie Glover. The shopping center contained the leased store and a supermarket. The initial term of the lease was for five years with an option to renew for five consecutive additional five year terms. The annual rent for the initial term was $18,000 payable in monthly installments and the annual rent for any additional five year terms was $20,000.04. However, if the supermarket left the shopping center and was not replaced by a similar supermarket, Family Dollar, if it remained, was to pay rent at the lesser of the fixed annual rent or rent equal to three percent (3%) of annual gross sales of the store. If Family Dollar elected to pay the percentage rent, then the percentage rent was payable within sixty (60) days after December 31, the end of the lease year.[1] The lease also provided that landlords "maintain, keep and repair, at their expense ..." the shopping center.

After the supermarket left the shopping center in April 1988, Family Dollar elected

---

1. Section 23 of the lease provides, in pertinent part:

> ... So long as such breach exists [no supermarket in the shopping center] and Tenant has not terminated this lease, Tenant's only obligation with respect to rent shall be the payment of the lesser of (i) the fixed minimum rent set forth in Paragraph 1 above, or (ii) percentage rent of three percent (3%) of the gross sales made by Tenant on the demised premises during each lease year period, with no fixed minimum rent. Gross sales shall mean all sales made less sales tax, excise tax, refunds and void sales, and less sales of cigarettes, beverages, paper products, motor oil and sundry drugs, including but not limited to health and beauty aids. Such percentage rent to be payable within sixty (60) days after the end of each lease year. For purposes of this paragraph, the term "lease year" shall mean the calendar year and shall always end on December 31.

to pay the percentage rent. The original landlords, Mr. and Mrs. Glover, filed a voluntary bankruptcy petition and on July 28, 1990, the shopping center was purchased by the Fraleys at a court-ordered trustee's sale. The sale and the deed from trustee to the Fraleys, dated September 27, 1990, were made expressly subject to the terms and provisions of Family Dollar's lease. Although the lease was not recorded, a Memorandum of the lease between Mr. and Mrs. Glover and Family Dollar describing the premises and the general terms of the lease was recorded.

After purchasing the shopping center, the Fraleys began operating a family furniture manufacturing business in the former supermarket. Before the trustee's sale and after Mr. and Mrs. Glover refused to make repairs, Family Dollar fixed a water leak and installed two air conditioners.

By letter dated October 23, 1990, Family Dollar informed the Fraleys that it intended to extend the lease for five years. The Fraleys, by letter dated November 28, 1990 from their lawyer, told Family Dollar that they thought the bankruptcy proceedings extinguished the lease, and that "the Lease needs modification and revision as a condition of any extension."[2]

On January 25, 1991, Family Dollar mistakenly paid $3,776.46, the percentage rent ($16,497.25) less repairs ($12,160) and 1989 rent overpayment ($570.79), to the former landlords, Mr. and Mrs. Glover, who cashed the check. By letter dated March 26, 1991, the Fraleys notified Family Dollar that they had not received any rent and if the rent was not paid within thirty (30) days, the lease was terminated. Family Dollar then sent the Fraleys $3,776.46 by check dated April 15, 1991 for the 1990 rent.

By letter dated April 24, 1991, the Fraleys returned Family Dollar's check and said rent should be prorated based on ownership without any deductions. By check dated May 13, 1990, Family Dollar sent the

Fraleys $5,646.07 for the Fraleys' prorated share of the 1990 rent.

The Fraleys rejected Family Dollar's check and on May 20, 1990, filed suit to evict Family Dollar for failing to pay the 1990 rent.[3] After a bench trial, the circuit court ordered Family Dollar to pay $16,497.25 for the 1990 rent and evicted Family Dollar from the store. The circuit court also required Family Dollar to pay the costs of the action and granted Family Dollar's motion for a stay pending the posting of a $25,000 bond. Family Dollar appealed to this Court.

## I

The first issue before this Court is a factual question concerning the amount of rent owed for 1990. The circuit court determined that Family Dollar owed the Fraleys $16,497.25 for the 1990 rent or the percentage rent for the entire year. On appeal, Family Dollar maintains that because the Fraleys owned the store for part of the year, the Fraleys are entitled to collect rent only for their period of ownership.

▮ This Court has long held that a valid written agreement using plain and unambiguous language is to be enforced according to its plain intent and should not be construed. The rule is set forth in Syllabus Point 1, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962), which states:

> A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.

*See* Syllabus Point 2, *Orteza v. Monongalia County General Hospital*, 173 W.Va. 461, 318 S.E.2d 40 (1984) ("Where the terms of a contract are clear and unambig-

---

2. The record indicates that the Fraleys did not inquire about the terms of the lease until after they purchased the shopping center. Apparently, the Fraleys then attempted without success to have the lease modified.

3. The Fraleys maintain that Family Dollar's check for $5,646.07 did not arrive before the suit was filed. However, the certified mail receipt indicates that the check was received on May 16, 1991.

uous, they must be applied and not construed.")

■ Although the shopping center was sold by a trustee in the Glover bankruptcy, the sale was "free and clear of all liens with all perfected liens attaching to the proceeds, but subject to the lease of Family Dollar Stores of Marlinton W Va [sic] Inc." Based on the order of the bankruptcy judge, and the deed from the trustee to the Fraleys, the lease remains in effect.

■ Because the lease is valid, the lease determines the amount of rent owed by Family Dollar in 1990. Section 23 of the lease provides that when the shopping center lacks a supermarket, the rent is the lesser of the annual rent or three percent (3%) of the gross sales. (*See supra* p. 2) Because the store had two different owners in 1990, the rent should be prorated based on the period of ownership. The Fraleys became the owners on September 27, 1990, the date of their deed from the trustee. Using the formula provided in the lease, the rent owned to the Fraleys for 1990 by Family Dollar is the lesser of the annual rent prorated for 3 months and 3 days ($4,650) or three percent of the gross sales from September 27, 1990 through December 31, 1990 ($5,646.07).[4]

We also note that the record shows that in 1990, before the sale of the store, Family Dollar spent $12,160 for repairs. Section 12 of the lease assigns the responsibility for repairs and replacements in excess of $200 to the landlords and section 14 permits Family Dollar, after notice to the landlords, to make the necessary repairs and to deduct such costs from the rent. However, we need not determine if the repair costs can be charged to the Fraleys because the prorated rent owed by Family Dollar to the former owners approximately equals the repair costs.[5]

■ Given the plain and unambiguous language of the lease, we find that the circuit court should have prorated the 1990 rent based on the period of ownership and found that under the lease Family Dollar owes $4,650 to the Fraleys for the 1990 rent.

The finding of a trial court upon facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such findings.

Syllabus Point 6, *Cotiga Development Co., supra.*

## II

Family Dollar also appeals the circuit court's determination that the lease was forfeited because Family Dollar failed to pay the 1990 rent within thirty days after receiving notice of non-payment.[6] It is an "elementary principle of equity jurisprudence that equity looks with disfavor upon forfeitures, and that equity never enforces a penalty or forfeiture if such can be avoided." *Sun Lumber Co. v. Thompson Land & Coal Co.*, 138 W.Va. 68, 76, 76 S.E.2d 105, 109 (1953).

■ In Syllabus Point 1, *Peerless Carbon Black Co. v. Gillespie*, 87 W.Va. 441, 105 S.E. 517 (1920), we stated:

Provisions of a contract, effecting a forfeiture or exacting a penalty, are strictly construed against the party for whose benefit they were incorporated in the instrument.

*See* Syllabus Point 1, *Bickel v. Sheppard*, 98 W.Va. 305, 127 S.E. 41 (1925) (forfeiture

---

4. Although the Fraleys questioned Family Dollar's gross sales information, the only evidence of the percentage rent was that presented by Family Dollar.

5. We also note that apparently Family Dollar overpaid the 1989 rent. However, the overpayment was made to the former owners and the lease has no provision dealing with rent overpayment.

6. Section 17 of the lease provides, in pertinent part:

If the rent above referred to, or any part thereof, shall be unpaid on the date of payment by the terms hereof, and remain so for a period of thirty (30) days after written notice shall have been received by Tenant, ... it shall and may be lawful for the Landlords, at their option, to declare the said term ended and enter into the demised premises....

provision are strictly construed against the party for whose benefit they were inserted); *McCartney v. Campbell*, 114 W.Va. 332, 171 S.E. 821 (1933) (holding that the contract should not have been forfeited because the vendee's failure to pay was not intentional or willful and the vendor did not suffer material injury).

■ Based on the record, Family Dollar's failure to pay the rent within thirty days of receiving the Fraleys' notice was not willful or intentional. Family Dollar, by mistake, had sent the 1990 rent to the former owners, who cashed the check. After the Fraleys notified Family Dollar that the rent had not been paid, Family Dollar attempted to pay within thirty days. The Fraleys returned Family Dollar's rent check as insufficient and said that the rent owed to the Fraleys should be prorated based on ownership and without deductions. Family Dollar attempted to comply. However, the Fraleys instituted suit to have the lease declared forfeited for non-payment of rent.

We find that circuit court erred in declaring a forfeiture of the lease. The record indicates that Family Dollar's failure timely to pay the 1990 rent was not wilful or intentional and the Fraleys have not suffered a material injury from the delay. Similar to *McCartney supra* at 334, 171 S.E. at 822, "[i]nterest will seemingly be sufficient compensation in this case." Therefore, we find that the lease remains in effect and that the Fraleys are entitled to the 1990 rent with interest from the date of the lower court's order. We also find that Family Dollar should not have been required to pay the costs of the action.

For the above stated reasons, the judgment of the Circuit Court of Pendleton County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.