## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**CHERYL WILHELM,**

**Plaintiff Below, Petitioner**

**vs) No. 15-0768** (Tyler County 13-C-45)

**JAY-BEE PRODUCTION COMPANY,**

**Defendant Below, Respondent**

**FILED**

**October 13, 2016**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioner Cheryl Wilhelm (hereinafter "petitioner"), by counsel David Conrad Gall, appeals the circuit court's July 7, 2015, order granting her motion for summary judgment, but denying, in part, the relief requested in her complaint. Petitioner moved for summary judgment seeking a declaration that respondent Jay-Bee Production (hereinafter "respondent") breached the oil and gas lease held by petitioner, that the lease was accordingly forfeited, and that she was entitled to 100% of the royalties from her share of the oil and gas wells from the date of forfeiture to the date of judgment. Respondent, by counsel Michael W. Taylor, filed a response. The circuit court granted summary judgment, finding that respondent had, in fact, willfully breached the lease and petitioner was entitled to her contractual royalties, plus interest and attorney fees, but that petitioner was not entitled to forfeiture of the lease because petitioner had not been irreparably harmed nor suffered a material injury.

This Court has considered the parties' briefs, oral arguments, and the appendix record on appeal. Under the limited circumstances presented in this case, we find a memorandum decision affirming the circuit court appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure. As explained below, we conclude that the circuit court did not abuse its discretion by determining that petitioner was not entitled to forfeiture of the subject lease.

### I. FACTUAL AND PROCEDURAL HISTORY

Petitioner is a fractional owner[1] of the mineral rights of a tract of land located in Tyler County, West Virginia. On April 20, 2010, she entered into an oil and gas lease with respondent, entitling her to a royalty of 1/8 of the oil and gas produced by her interest, payable quarterly. The lease contained a forfeiture clause which provided that

> no default shall be declared against the Lessee by the Lessor for
> failure of the Lessee to make any payment or perform any

---

[1] Petitioner states that she holds a 1/30th interest in the mineral rights to the 39.7 acres at issue.

1

conditions provided for herein unless Lessee shall refuse or neglect to pay or perform the same for ten days after having received written notice by certified mail from the Lessor of his intention to declare such default.

The lease further contained an "Entireties" clause which provided that "this lease embodies the entire contract and agreement between Lessor and Lessee." A section entitled "Special Conditions" was left blank.

Petitioner's property was pooled with other tracts and wells were developed and drilled, resulting in oil and/or gas production. Before beginning to pay petitioner royalties, respondent sent petitioner a "Division Order" for her signature outlining the "decimal interest" to which she was entitled. Although the Division Order contained a disclaimer stating that "this agreement does not amend any lease or operating agreement between the interest owners and the lessee or operator or any other contracts for the purchase of oil or gas," it did include various additional "provisions" which were to "apply to each interest owner who executes this agreement." Among other things, the additional terms provided for payment on a monthly, rather than quarterly basis, indemnity from all liability resulting from payments made, an authorization to withhold funds if a dispute affecting title to the division of interest developed, and withholding of royalties if owner failed to pay lease expenses. Petitioner objected to these additional terms and provided notice of forfeiture of the lease via her attorney on February 5, 2013.[2] Respondent countered by again sending the Division Order, highlighting the portion which indicated it did not amend the lease and stating that petitioner's money was being escrowed and would be released upon receipt of the executed Division Order.

Petitioner filed a petition for declaratory relief requesting the circuit court to void the lease, order payment of the royalties,[3] and award attorney fees and costs. Petitioner moved for summary judgment, whereupon the circuit court found that respondent "had no legal right to hold [petitioner's] royalty payments for ransom until she executed their 'Division Order'" and therefore breached the lease. Despite respondent's contention that Division Orders are industry custom and have been found proper prerequisites to payment by the Ohio Supreme Court,[4] the court further found that respondent's failure to pay was "willful and the delay in payment was unreasonably long." However, the circuit court determined that petitioner was not irreparably

_____

[2] Given the lease's ten-day grace period, this notice would render the lease arguably forfeited as of February 15, 2013.

[3] Petitioner sought recovery of the royalties accrued prior to the date of forfeiture (1/8 per the lease) and 100% of any royalties generated subsequent to the forfeiture. *See* n.2.

[4] *See Blausey v. Stein*, 400 N.E.2d 408 (Ohio 1980) (holding that requiring lessor to execute division order prior to receipt of royalties did not impose such a burden that it could be considered attempted modification of lease); *but see Fontenot v. Sunray Mid-Continent Oil Co.*, 197 So.2d 715 (1967) (holding lessees' unjustified failure to pay royalties awaiting execution of division order warranted cancellation of lease). Respondent did not cross-assign as error the circuit court's conclusion that it willfully breached the lease.

2

harmed, did not suffer a material injury, and could be fully compensated for the breach in absence of forfeiture of the lease. Accordingly, the circuit court denied petitioner's request to declare the lease forfeited and awarded the royalties, along with prejudgment interest[5] and attorney fees. Petitioner now appeals that portion of the order declining to declare the lease forfeited.

## II. STANDARD OF REVIEW

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997). With these standards in mind, we turn to petitioner's assignments of error.

## III. DISCUSSION

Petitioner makes one assignment of error: that the circuit court erred in refusing to declare the lease forfeited. Petitioner argues simply that the lease plainly permits forfeiture upon demand after breach of the lease and that respondent's willful breach of the lease strips it of any equity disfavoring forfeiture. Respondent counters by arguing that this Court has embraced the majority view holding that equity disfavors forfeiture and that petitioner has properly been made whole.

Indeed, this Court has held that "equity will never enforce a forfeiture, but will always relieve from a technical forfeiture, when no pecuniary or substantial injury has resulted, and full performance of the covenant or condition can, and will be, effected." *Pheasant v. Hanna*, 63 W. Va. 613, 620, 60 S.E. 618, 621 (1908). The rationale behind this relief is that the forfeiture provision is "primarily a security and payment [is] all that the lessor is equitably entitled to demand, and that the allowance of interest forms a certain rule of compensation for the delay." *Beech Fork Coal Co. v. Pocahontas Corp.*, 109 W. Va. 39, 46, 152 S.E. 785, 788 (1930); *see also Zanetos v. Sparks*, 468 N.E.2d 938, 940 (Ohio Ct. App. 1984) ("The forfeiture clause for nonpayment of rent is not strictly construed, rather, it is viewed as merely security for the payment of rent."). More specifically, this Court has held:

> The forfeiture clause in a gas and oil lease, under which a valuable estate vested in the lessee in so far as the rentals are concerned, made payable in gas, oil, and money, *is in the nature of a penalty to secure such rentals against which a court of equity will grant relief when compensation for such rentals can be fully made*, and great loss wholly disproportionate to the injury occasioned by the

---

[5] Interest was awarded at the statutory rate of 7% pursuant to W. Va. Code § 56-6-31 (2006).

breach of the contract would otherwise result to the lessee negligently, but not fraudulently, in default.

Syllabus, *S. Penn Oil Co. v. Edgell*, 48 W. Va. 348, 37 S.E. 596 (1900) (emphasis added).

This rule of relief from forfeiture underwent a slight modern "qualification of the rule" in *McCartney v. Campbell*, 114 W. Va. 332, 333, 171 S.E. 821, 822 (1933), which enlarged the considerations before the court when determining whether equity favored forfeiture in a particular case. In *McCartney*, the Court reiterated the general rule that "relief in equity ordinarily goes as matter of course, where full compensation can be made," but cited authority supporting the court's discretion to enforce forfeiture where the breach was intentional or willful. *See* Syllabus. Importantly, the Court concluded its opinion by citing with approval the following from Pomeroy's Specific Performance (3d Ed.) § 335:

> "A forfeiture caused by the non-payment of money, however express may be the language of the contract, will, as a general rule, be relieved from, on the theory that interest is a sufficient compensation. But the failure to pay must not be willful, nor the delay in payment be unreasonably long, and the plaintiff seeking relief from his default must show that it was not intentional and has not caused irreparable injury to the defendant."

*McCartney*, 114 W. Va. at 334, 171 S.E. at 823. The Court noted further that the lessor had not suffered "any material injury" and that "[i]nterest will seemingly be sufficient compensation in this case." *Id.* at 334, 171 S.E. at 822.

Therefore, it is clear that our caselaw supports the notion that forfeiture of a lease should, as a matter of course, be relieved. It is equally clear, however, that as an equitable remedy, relief from forfeiture rests—as most equitable relief does—on a balancing of the equities. *See Quicken Loans, Inc. v. Brown*, 230 W. Va. 306, 328, 737 S.E.2d 640, 662 (2012) (noting disfavor of forfeiture and finding that "balancing of the equities" required that the parties be returned to the status quo); *see also Hignell v. Gebala*, 202 P.2d 378, 383 (Cal. Dist. Ct. App. 1949) ("[T]he court in balancing the equities should take into consideration the circumstances of the case, the hardship, if any, to the lessee from the forfeiture, the hardship, if any, to the lessor from relieving the lessee from the forfeiture, the wilful or other character of the breach, and then use its best discretion in determining whether relief will be granted. Its action will not be upset unless there is a clear showing of abuse of discretion."); *Zanetos,* 468 N.E.2d at 940 ("The courts will balance the equities of the case and relieve the forfeiture where the equities favor the lessee."); *S. Hotel Co. v. Miscott, Inc.*, 337 N.E.2d 660, 663 (Ohio Ct. App. 1975) ("[W]hen the defendant raises equitable defenses as in this case the court must balance the equities in order to determine whether a forfeiture should be declared."); Warren, H. D., Annotation, *Relief against forfeiture of lease for nonpayment of rent,* 31 A.L.R.2d 321 (1953) ("The problem of granting or refusing equitable relief against a forfeiture of a lease for nonpayment of rent is essentially one of balancing the equities.").

Petitioner's nearly exclusive focus on the unambiguous forfeiture language contained in the lease fails to inform the issue of whether the circuit court abused its discretion in

4

weighing the equities in this case. The circuit court's order finds that although the breach was willful and the delay in payment was unreasonably long, petitioner suffered no material injury or irreparable harm and could be fully compensated for the breach. The circuit court awarded interest, as well as attorney fees, returning the parties to the "status quo."

More importantly, as noted above, this Court reviews the ultimate disposition of the circuit court under an abuse of discretion standard. While most certainly this Court does not condone a lessee engaging in willful breach of a lease, thereby compelling the lessor to pursue litigation to enforce its rights under the lease, we cannot under the circumstances of this case conclude that the circuit court abused its discretion in granting relief from forfeiture of the lease. Our precedent clearly identifies the factors the circuit court must weigh when balancing the equities involved in forfeiture of a lease, all of which were properly considered by the circuit court below and guided its refusal to enforce forfeiture. Accordingly, we find no error in the circuit court's refusal to enforce forfeiture of the subject lease.

## IV. CONCLUSION

For the reasons set forth above, this Court affirms the July 7, 2015, order of the Circuit Court of Tyler County.

Affirmed.

**ISSUED:** October 13, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Brent E. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman

**CONCURRING AND WRITING SEPARATELY:**

Justice Allen H. Loughry II

Loughry, J., concurring:

I concur in the majority's conclusion that the circuit court committed no abuse of discretion in fashioning an equitable remedy in this case and declining to enforce the forfeiture. However, I write separately to ensure that my concurrence in the majority is not misconstrued as sanctioning the respondent's willful refusal to comply with the lease and galling attempt to strong-arm the petitioner into executing the division order. Under the circumstances of this case, the petitioner was fortunately able to hire counsel and institute litigation that made her fully whole through the circuit court's award of royalties, interest, and attorney's fees. Given the state

5

of our law and the broad discretion granted to the circuit court to fashion a remedy, I found no discernible error in the instant case.

However, I caution individuals and/or entities similarly-situated to the respondent that this Court does not condone business practices that compel citizens to institute litigation to enforce their rights. While the petitioner was in a position to hire counsel to assist her, other citizens may not have such resources available to them. Individuals and/or entities which opportunistically attempt to take advantage of citizens with limited resources to vindicate their rights will find little favor with this Court. Accordingly, the "take away" message from this case is *not* that individuals or entities are free to act with impunity insofar as they are willing to shoulder the expense should citizens actually institute and be successful in litigation. Rather, given the broad discretion granted to our lower courts in such matters, this Court will seldom provide relief to *either* party aggrieved by the lower court's equitable remedy. Therefore, this Court's refusal to meddle with the circuit court's disposition can be fairly read as an equal unwillingness to disturb its disposition had it *enforced* the forfeiture.

For these reasons, I respectfully concur in the majority's decision.